Eric Nielson #5327
Laura Nielson #15008
G. ERIC NIELSON & ASSOCIATES
4790 S. Holladay Blvd.
Holladay, Utah 84117
Phone: (801) 424-9088
Fax:    (801) 438-0199
ericnielson@ericnielson.com
lauranielson@ericnielson.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| SHANI N., and J.G.,<br><br>    Plaintiffs,<br><br>vs.<br><br>GILLETTE CHILDREN'S SPECIALTY HEALTHCARE MEDICAL BENEFIT PLAN,<br><br>    Defendant. | **COMPLAINT**<br><br>Case No. 4:22-cv-00070-PK<br>Magistrate Judge Paul Kohler |

**COME NOW** Shani N., and J.G., on their own behalf collectively, individually, and through their undersigned counsel, complains and alleges against the above-captioned defendant as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.  Plaintiff Shani N. ("Shani") is a natural person residing in St. Paul, Minnesota. She is covered by a self-funded plan, Gillette Children's Specialty Healthcare Medical Benefit Plan, ("the Plan"), provided through Shani's employer, Gillette Children's Specialty Healthcare.

2.  Plaintiff J.G. ("J.G.") is a resident of St. Paul, Minnesota. As a beneficiary of her mother's health insurance plan, she received treatment at Wingate Wilderness Therapy ("Wingate"), a licensed residential treatment facility in Kanab, Utah from June 7, 2018, through

1

August 20, 2018. She also received treatment at Spring Ridge Academy ("SRA"), a licensed residential treatment facility in Mayer, Arizona from August 21, 2018 through the date of her discharge.

3. The Plan is an employee benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et. seq.

4. This Court has jurisdiction over this matter and venue is appropriate pursuant to 29 U.S.C. §1132(e)(2) and 29 U.S.C. § 1391(c) because the treatment in question was rendered in the State of Utah.

5. Plaintiffs seek payment of J.G.'s denied claims from June 7, 2018, through August 20, 2018, with Wingate, and August 21, 2018 through the date of discharge with SRA pursuant to 29 U.S.C. §1132(a)(1)(B).

6. Plaintiffs also seek an award of prejudgment interest and attorney's fees pursuant to 29 U.S.C. §1132(g).

## FACTUAL BACKGROUND

7. J.G. has struggled with a history of Depression, Anorexia Nervosa, Generalized Anxiety Disorder, Unspecified Trauma-Related Disorder, and Cluster B traits.

8. After many attempts at lower levels of care, J.G. was admitted to Wingate on August 20, 2018.

## PRE-LITIGATION APPEAL PROCESS FOR ASPIRO

8. Claims were submitted to the Plan by the Plaintiffs for J.G.'s treatment at Wingate.

9. On August 21, 2018, HealthPartners sent a denial letter for J.G.'s treatment at Wingate, stating, in part:

> **Here is the reason for our decision: There was a request for coverage of a Wilderness Program. Your Benefit Plan covers medically**

> necessary care. However, in the Mental Health Services Inpatient Services section it states the following in regards to Mental Health Residential care;
>
> - **The Plan also covers medically necessary psychiatric residential treatment for emotionally disabled children as diagnosed by a physician. This care must be authorized by HealthPartners and provided by a hospital or residential care licensed by the local state or Department of Health and Human Services. The child must be under 18 years of age and an eligible dependent according to the terms of this SB. Services not covered under this benefit include shelter services, correctional services, detention services, transitional services, group residential services, foster care services and wilderness programs.**
>
> **Wingate is a Wilderness Program and therefore not covered.**

10. On February 13, 2019, the family submitted a Level One Member Appeal.

11. In this letter, the family outlined that J.G.'s treatment at Wingate is an analogous level of care to their intermediate medical health benefits, such as skilled nursing facility services or rehabilitative services.

12. The family further outlined that HealthPartners was not applying a similar treatment limitation to mental health and substance use disorder benefits as they were to medical health benefits by denying J.G.'s claims because they were rendered outdoors but not have the same limitation on medical/surgical benefits.

13. On March 19, 2019, HealthPartners responded to the appeal upholding the denial, stating, in part:

> **Your plan provides coverage for eligible inpatient and outpatient behavioral health services. However, your plan specifically e ludes coverage for wilderness programs. I have enclosed the applicable**

**information from your plan document, which explains your plan's benefits, provisions, and limitations.**

14. On August 21, 2019, the family submitted a Level Two Member Appeal to HealthPartners for the denied Wingate claims.

15. Again, the family outlines that the wilderness exclusion is listed exclusively in the mental health benefits section and not included in the plan's general exclusions, making it clear that the exclusion does not apply equally to behavioral health benefits and medical benefits. The family further outlines that HealthPartners has imposed a non-quantitative treatment limitation ("NQTL") and is in violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA").

16. The family asked to be provided with the specific reasons for the determination along with any corresponding evidence.

17. On September 18, 2019, HealthPartners sent a letter upholding the denial.

18. The family exhausted their pre-litigation administrative appeals process with HealthPartners.

## PRE-LITIGATION APPEAL PROCESS FOR SRA

19. J.G. was discharged from Wingate on August 20, 2018 and admitted to SRA on August 21, 2018. HealthPartners recognized J.G.'s treatment as medically necessary and paid for claims from August 21, 2018 through December 5, 2018 and from January 1, 2019 through March 5, 2019.

20. In January 2019, Shani and J.G. received Explanations of Benefits ("EOBs") outlining payments made in December of 2018. Shani was concerned because the plan was inconsistent about how much of these claims they would cover. December 1, 2018 through

December 5, 2018, HealthPartners covered J.G.'s residential treatment at 49.8%, but December 6, 2018 through December 31, 2018 J.G.'s claims were only covered at 1.9%.

21. The family requested a full and complete explanation of account from HealthPartners on how these numbers were reached.

22. HealthPartners also denied J.G.'s treatment from March 6, 2019 through the date of J.G.'s discharge due to the fact that she turned 18 in March of 2019.

23. The family further outlined in their appeal that HealthPartners had exposed another NQTL by stating that mental health coverage was only available for children under the age of 18 and not for adults.

24. The appeal stated that SRA's services were at an intermediate level of care on the mental health benefits side and should be covered at the same rate as skilled nursing facilities on the medical benefits side. The family pointed out that if HealthPartners wants to limit intermediate or subacute behavioral health benefits to minors, then HealthPartners would similarly have to limit subacute intermediate medical benefits to an arbitrary age demographic.

25. The family requested that HealthPartners complete a parity analysis of their plan.

26. On September 6, 2019, HealthPartners sent the family a letter upholding their denial of J.G.'s treatment at SRA, outlining their same denial rationale from their previous denial letter.

27. On February 17, 2020, the family submitted a Level Two Member Appeal for SRA.

28. The family stated they understood why their daughter's services were excluded, but they outlined again that they do not believe excluding those services is legal under federal parity law. They once again requested a parity analysis of their plan.

29. On March 20, 2020, the Plan sent a letter upholding the denial. HealthPartners mentions that J.G.'s treatment at SRA was determined to be medically necessary, but she is over 18 and therefore it is not covered.

30. The family exhausted their pre-litigation administrative appeals process with HealthPartners.

## CAUSES OF ACTION

### (Claim for Benefits Under 29 U.S.C. §1132(a)(1)(B))

2. ERISA imposes higher-than-marketplace standards on the Plan and other ERISA fiduciaries. It sets forth a special standard of care upon a plan fiduciary, namely that the administrator discharges all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1).

3. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that plan administrators provide a "full and fair review" of claim denials. 29 U.S.C. §1104(a)(1)(D) and §1133(2).

31. The Plan's actions or failures to act constitute a breach of its fiduciary duties to Shani and J.G. under 29 U.S.C. §1104 and §1133 in the following ways: 1) by failing to set forth the specific reasons for J.G.'s claim denial, written in a manner calculated to be understood by the family; 2) by failing to provide a "full and fair review," as anticipated in ERISA's claims processing regulations, of the denial of the J.G.'s claim; 3) by developing and relying upon internal practices and policies that improperly restricted coverage in contravention of Plaintiffs' health insurance plans, ERISA; and 4) by failing to discharge all plan duties duly in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits.

**RELIEF**

33. WHEREFORE, the Plaintiffs seek relief as follows:

34. Judgment in the total amount that is owed for J.G.'s medically necessary treatment at Wingate and SRA under the terms of the Plan, plus pre- and post-judgment interest to the date of payment;

35. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

36. For such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 16th day of September 2022.

                                                              G. ERIC NIELSON & ASSOCIATES
                                                              */s/ Laura Nielson*
                                                              Laura Nielson

                                                              *Attorney for Plaintiff*